**A.K. SUDA, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 00–172C.**

United States Court of Federal Claims.

Feb. 9, 2006.

William R. Pitts, Metairie, LA, for plaintiff. Richard M. Ireland, Jr., PLC, Metairie, LA, on the briefs.

Nancy Myung–Jin Kim, Washington, DC, with whom was Assistant Attorney General Peter D. Keisler, for defendant. Christian J. Moran, Department of Justice, on the briefs. Arthur M. Taylor, Defense Contract Management Agency, and Doug Jacobson, Contract Disputes Center, Ft. Snelling, MN, of counsel.

## MEMORANDUM OPINION AND ORDER

CHRISTINE O.C. MILLER, Judge.

This case is before the court on defendant's second motion for summary judgment.[1] Argument is deemed unnecessary. The two issues for decision are (1) whether the Federal Acquisition Regulation, 48 C.F.R. (FAR) § 31.205–6 (2000), or the Cost Accounting Standard, 48 C.F.R. (CAS) § 9904.415–40 (2000), precludes a government contractor from certifying executive compensation in excess of the amount actually deducted on the contractor's federal tax returns; and (2) whether plaintiff is entitled to exclude certain items, including other direct costs, from the base used to allocate indirect costs. Because genuine issues of material fact are present as to the method in

---

1. See A.K. Suda, Inc. v. United States, No. 00–172C (Fed.Cl. Sept.13, 2001) (unpubl.) (denying motion for partial summary judgment).

which the contractor paid its executives and as to whether plaintiff received permission from an authorized government representative to exclude certain items from its cost input base, summary judgment is not appropriate, and defendant's motion again must be denied.

## FACTS

The following facts are undisputed. On August 17, 1995, the Department of the Navy, Fleet Industrial Supply Center Norfolk, Detachment Philadelphia (the "Navy"), issued a request for proposals for shipbuilding-related support services. On October 10, 1995, A.K. Suda, Inc. ("plaintiff"), a closely held Louisiana corporation submitted its proposal. Ajay Suda and Bulbul Suda, husband and wife, serve as plaintiff's President and Vice President, respectively.

Acting through the Small Business Administration and Fleet Industrial Supply Center ("FISC"), the Navy awarded to plaintiff on January 26, 1996, the indefinite-delivery contract, which specified cost reimbursement plus fixed fee at an estimated amount of $1,165,218.00. The base year of the contract concluded on January, 31, 1997, and the Navy exercised its first option to extend the contract through January 31, 1998.

Prior to signing the contract, Mr. Suda, on January 3, 1996, issued the minutes of plaintiff's Annual Board of Directors' Meeting, which established the following executive salaries:

RESOLVED that Ajay Suda be paid a salary of $250,000.00 per annum [with ef-

fect from] January 1996. This salary is to be paid on a "payable when able" basis. RESOLVED that Bulbul Suda be paid a salary of $100,000 per annum [with effect from] January 1996. This salary is to be paid on a "payable when able" basis.

It quickly became apparent once work was underway that contract costs were higher than originally anticipated. In order to increase the total estimated contract cost and resolve various other issues, the contract underwent at least ten modifications. As part of this on-going process, plaintiff, seeking to obtain "a fair economic return on its work under the contract," Pl.'s Br., filed Nov. 8, 2005, at 21, discussed various cost-reduction possibilities with Sharon Phillips. Plaintiff takes the position that Ms. Phillips had been designated by the contracting officer as the individual responsible for future contract modifications.

During calendar year 1996, plaintiff reported on its tax return paying Mr. and Mrs. Suda only $238,263.00 in salary, which constituted $111,737.00 less than the amount of executive salary to which they were entitled.[2] When, on April 24, 1997, plaintiff submitted its certified final indirect cost rate proposal for calendar year 1996 to the Defense Contract Audit Agency (the "DCAA"), the DCAA questioned the salary claimed as paid to Mr. and Mrs. Suda because it exceeded by $104,155.00 the amount that plaintiff actually deducted on its 1996 tax return.

Plaintiff grounds its tax treatment on a practice of the Internal Revenue Service (the "IRS") that diverges from the Federal Acquisition Regulation, 48 C.F.R. (FAR) § 31.205–6(b)(2)(I) (2000).[3] Plaintiff asserted that,

---

2. Plaintiff paid its President, Mr. Suda, $168,277.00 and its Vice President, Mrs. Suda, $69,986.00.

3. The language of 48 C.F.R. (FAR) § 31.205–6 has been revised significantly since the last summary judgment motion. See 48 C.F.R. (FAR) § 31.205–6(b)(2)(I) (2005) (as revised by 68 Fed. Reg. 43,863, 43,866–67 (July 24, 2003)). The parties, however, cite to the provision as it existed at the time the contract was signed. It then read:

Deferred compensation is an award given by an employer to compensate an employee in a future cost accounting period or periods for services rendered in one or more cost accounting periods before the date of receipt of com-

pensation by the employee. Deferred compensation does not include the amount of year-end accruals for salaries, wages, or bonuses that are paid within a reasonable period of time after the end of the cost accounting period. Subject to [31.205–6(a)], deferred awards are allowable when they are based on current or future services. Awards made in periods subsequent to the period when the work being remunerated was performed are not allowable. 51 Fed.Reg. 12,296, 12,300 (Apr. 9, 1986). However, the court will use the convention established by the parties of citing to the provision as it appeared in the 2000 version of the FAR. See 48 C.F.R. (FAR) § 31.205–6(b)(2)(I) (2000).

In addition, it should be noted that neither party has discussed that the provision has been

while the IRS permitted a deduction for the amount of salary actually paid in the tax year, the FAR permits accounting for deferred compensation in government contracts. The DCAA objected, however, and took the position that the FAR restricted the allowable cost of salaries for owners of closely held corporations to the amounts actually deducted on their tax returns.

Seeking to resolve the matter, plaintiff, on August 3, 1998, submitted a claim to the Administrative Contract Officer (the "ACO"). This claim, made in accordance with the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–13 (1994 & Supp. V 1999), requested a final decision that the deferred portion of plaintiff's executive salaries be permitted as costs. The ACO denied plaintiff's request on April 1, 1999, limiting plaintiff's claim to the amount actually deducted on the 1996 tax return.

Plaintiff compensated Mr. and Mrs. Suda in a similar manner in 1997, paying out $149,129.00 and $55,283.00, respectively. Plaintiff submitted its certified final indirect-cost rate proposal for calendar year 1997 to the DCAA on February 20, 1998, and the DCAA once again questioned the salary claimed as paid to plaintiff's executives because it exceeded the amount that plaintiff actually deducted on its 1997 tax return. On September 30, 1999, plaintiff submitted a claim to the ACO, challenging the DCAA's decision. The claim was denied on October 21, 1999.

Following the rejection of its second claim, plaintiff brought suit in the United States Court of Federal Claims on April 3, 2000, requesting judgment that (1) it is entitled to include the current and deferred salaries of its President and Vice President in its certified proposal and (2) plaintiff's computer costs should be excluded from its General and Administrative ("G & A") base. This case has languished on the court's docket ever since due to delays that can be laid at the parties' feet—principally those of plaintiff.

Defendant moved for partial summary judgment, seeking to dismiss the salary portion of plaintiff's claim. Oral argument was held on July 10, 2001, and defendant's motion ultimately was denied. *See A.K. Suda, Inc. v. United States,* No. 00–172C (Fed.Cl. Sept.13, 2001) (unpubl.) (order denying motion for partial summary judgment).

On March 15, 2002, defendant filed a motion to stay proceedings while the parties entered into settlement discussions. These discussions continued for over two years, during which time this court, in an effort to oversee the process, requested and received no fewer than twenty status reports.

Finally, recognizing the parties' inability to consummate settlement, the court ordered trial to commence on February 8, 2005, in New Orleans, Louisiana. The federal district court in New Orleans informed the court that a courtroom would be unavailable due to Mardi Gras, and trial was postponed until April 12, 2005.

On March 10, 2005, the parties announced that they were not prepared to go forward, but plaintiff requested a ninety-day continuance, within which to secure additional counsel. The unopposed motion was granted, and trial again was delayed until June 16, 2005. Following a June 23, 2005 status conference, trial further was postponed to November 8, 2005. As a courtroom again proved unavailable, trial was set back an additional week.

Defendant, which had assigned a new attorney, opted to exploit the periods of delay by submitting a second motion for summary judgment—the basis of this opinion. Plaintiff requested an extension of the reply deadline so that lead counsel could fulfill his professorial duties at the Summer Law School of Tulane and Mrs. Suda could visit her elderly parents in Italy. The unopposed motion was granted, and it was followed hard upon by a second unopposed motion, which was granted in an August 24, 2005, order explicitly denying any further extensions.

While the parties professed readiness for trial, circumstances beyond their control

amended, *see, e.g.* Def.'s Br. filed July 6, 2005, at 7 (quoting an older version of FAR § 31.205–6(k)(2) without any reference to date), or the

potential ramifications of these changes, if any. Therefore, the court also does not consider the matter at this time.

were not propitious. The onslaught of Hurricane Katrina and the subsequent breach of the levee protecting the New Orleans area from Lake Pontchartrain caused the offices of plaintiff's counsel to lose power, and prevented plaintiff from filing its reply brief in a timely manner. The court therefore permitted the date for filing to remain open, and trial was stayed indefinitely. Plaintiff, ultimately, filed its reply brief on November 8, 2005. It could be debated in this case whether "[a] delay is better than a disaster," as goes the anonymous saying, because the delay was eclipsed by a disaster that exacerbated the delay.

## DISCUSSION

### 1. *Summary judgment*

Summary judgment may be granted only where no genuine issue of material fact is present, and the movant is entitled to judgment as a matter of law. *See* RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). No genuine issue of material fact exists when a rational trier of fact could reasonably arrive at only one conclusion. *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 971 (Fed.Cir.2001); *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1553 n. 3 (Fed.Cir.1996).

"The moving party in a summary judgment motion has the burden to show 'that there is an absence of evidence to support the non-moving party's case[.]" ' *Crown Operations Intern., Ltd. v. Solutia Inc.*, 289

F.3d 1367, 1377 (Fed.Cir.2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The benefit of all reasonable presumptions and inferences runs to the party opposing summary judgment. *Matsushita Elec. Indus.*, 475 U.S. at 587–88, 106 S.Ct. 1348; *Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d 1253, 1257 (Fed.Cir.2001); see also *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed.Cir.1984) (noting that non-moving party shall "receive the benefit of all applicable presumptions, inferences, and intendments"). The purpose of summary judgment is " 'to secure the just, speedy and inexpensive determination of every action.' " *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed. R.Civ.P. 1). However, if "there is reason to believe that the better course would be to proceed to a full trial" a trial court may deny summary judgment. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

### 2. *Deferred compensation*

■ In support of its 2001 motion for partial summary judgment, defendant argued that a ruling in its favor was appropriate because the documentary record presented no evidence that plaintiff had an obligation to pay Mr. and Mrs. Suda deferred compensation. Defendant maintained that the absence of a written deferred compensation arrangement and the presence of the "payable when able" language in plaintiff's minutes constituted definitive proof that any intended deferred compensation could not be determined with reasonable accuracy. Such indeterminacy is impermissible under CAS 9904.415–40(a),[4] which limits any government reim-

---

4. CAS § 9904.415–40(a) provides:

The cost of deferred compensation shall be assigned to the cost accounting period in which the contractor incurs an obligation to compensate the employee. In the event no obligation is incurred prior to payment, the cost of deferred compensation shall be the amount paid and shall be assigned to the cost accounting period in which the payment is made.

CAS § 9904.415–50 elaborates:

  (a) The contractor shall be deemed to have incurred an obligation for the cost of deferred compensation when all of the following conditions have been met ....

(1) There is a requirement to make the future payment(s) which the contractor cannot unilaterally avoid.
(2) The deferred compensation award is to be satisfied by a future payment of money, other assets, or shares of stock of the contractor.
(3) The amount of the future payment can be measured with reasonable accuracy.
(4) The recipient of the award is known.
(5) If the terms of the award require that certain events must occur before an employee is entitled to receive the benefits, there is a reasonable probability that such events will occur.

bursement for deferred compensation to the present value of the future payments.

Plaintiff responded that its deferred compensation plan was, indeed, reasonably definite. According to Mrs. Suda, the "payable when able" language was meant to express that executive salaries would be honored when cash flow permitted. Affidavit of Bulbul Suda, May 14, 2001, ¶ 5. Moreover, she contends that plaintiff keeps a running account of deferred salary due and that, generally, executive salaries are fully paid within the calendar year or within 2.5 months thereafter. *Id.* ¶ 7; *see* Affidavit of Bulbul Suda, Nov. 3, 2005, ¶ 1.

During oral argument on the first dispositive motion, defendant conceded that a genuine issue of material fact was present as to whether defendant had a duty to pay executive compensation. Transcript of Proceedings, *A.K. Suda, Inc. v. United States*, No. 00–172C, at 10–11 (Fed.Cl. July 10, 2001) ("Tr."). Defendant then attempted to argue that, under FAR § 31.205–6(k)(1), plaintiff's compensation distribution scheme constituted the payment of salary, not deferred compensation.[5] Plaintiff parried this argument by noting that the Navy's shortcomings in setting interim billing rates and timely paying invoices contributed to plaintiff's inability to fully compensate its executives.

Ultimately, this court denied summary judgment, finding that there remained a genuine issue of material fact regarding whether plaintiff's payment procedure created a current or deferred compensation agreement with Mr. and Mrs. Suda. *See A.K. Suda, Inc.*, No. 00–172C, slip op. at 6. In addition, this court found that a genuine question existed as to whether plaintiff's 1997 proposal was affected adversely by the Navy's billing and compensation practices. *See id.*

In its present motion for summary judgment, defendant has returned to its position that any intended deferred compensation cannot be determined with reasonable accuracy and, as such, plaintiff's compensation must be labeled "salary" rather than "deferred compensation." In support of its position, defendant relies on CAS § 9904.415–50(a), which contains six conditions for determining that a contractor has incurred a deferred compensation obligation. In particular, defendant points to the third condition, which requires that "[t]he amount of the future payment can be measured with reasonable accuracy." CAS § 9904.415–50(a)(3). Defendant's argument is, essentially, the same one it pressed in 2001. During that motions practice, Mrs. Suda explained in her affidavit that unpaid salary accrued on a monthly basis at the rate of 1/12th of the annual salary. According to Mrs. Suda, records of plaintiff reflect a running account of the amount of deferred compensation due. Although the records themselves were not submitted with Mrs. Suda's affidavit, the court found that Ms. Suda's sworn recitation of plaintiff's salary and accounting payment procedures established a genuine issue of material fact sufficient to survive defendant's motion. Nothing has occurred in the intervening years to change the state of the record.

### 3. *Direct costs*

■ In addition to reiterating the basis of its unsuccessful partial summary judgment motion of 2001, defendant seeks summary

---

(6) For stock options, there must be a reasonable probability that the options ultimately will be exercised.

5. At oral argument held on July 10, 2001, defendant's counsel stated:

[W]e believe that [Mrs.] Suda's affidavit establishes in paragraph 5 and paragraph 7 that essentially what Suda was paying its employees was salary and that if you look to, for instance, there's a sentence in paragraph 5 which reads: "The intent expressed in paying salaries on a payable when able basis is to honor the obligation to pay the salaries as soon as cash flow is available from the collection of receivables to pay them," and then again in paragraph 7, "In many years the company has paid the full salaries during the calendar year or within two and a half months of the close of the year."

It's the government's position that basically although there are material issues of fact and dispute as to whether there was an obligation to pay, we think that the affidavit in fact supports the government's argument that this is not deferred compensation. It's salary.

Tr. of Proceedings, *A.K. Suda, Inc. v. United States*, No. 00–172C, at 10–11 (Fed.Cl. July 10, 2001).

judgment on the second count of plaintiff's complaint, which asserts that plaintiff is entitled to exclude certain items, including other direct costs, from the base used to allocate indirect costs.

Defendant maintains that plaintiff was not permitted to treat its direct costs in such a manner because such treatment would conflict with controlling federal regulations. Defendant further contends that the "erroneous statements" made by Navy officials instructing plaintiff to treat direct costs in the manner that it did—statements upon which plaintiff relied—have "no legal significance" and cannot create liability, because only the Navy's contracting officer or an authorized representative can bind the Government.[6] Def.'s Br. filed July 6, 2005, at 18. In support of its positions, defendant relies on FAR § 42.302(a).[7]

Plaintiff, for its part, agrees with defendant's contention that only a contracting officer or authorized representative may obligate the Government. However, plaintiff maintains that it was an authorized representative, Ms. Phillips, who originally permitted plaintiff to exclude certain items from its cost input base. Numerous discussions, various proposals, and a letter are among the tendered evidence that "led [plaintiff] to believe that the parties had agreed to modify the contract in a reasonable effort ...." Pl.'s Br. filed Nov. 8, 2005, at 24. Given the divergent factual scenarios presented by the parties, conducting full trial on the matter is the prudent course.

## CONCLUSION

Accordingly, based on the foregoing,

6. For purposes of this motion only, defendant concedes that government employees made erroneous statements to plaintiff. Def.'s Br. filed July 6, 2005, at 18.

7. Those portions of FAR § 42.302(a) cited by defendant provide:

The contracting officer normally delegates the following contract administration functions to a CAO [Contract Administration Officer]. The contracting officer may retain any of these functions, except those in paragraphs (a)(5), (a)(9), and (a)(11) of this section, unless the cognizant Federal agency (see 2.101) has des-

**IT IS ORDERED**, as follows:

1. Defendant's motion for summary judgment is denied without prejudice to renewing its arguments at trial.

2. By February 27, 2006, the parties shall submit a date, not to exceed five days, for trial to commence by May 15, 2006, in Washington, DC, and a schedule for all pretrial filings and the pretrial conference. To the extent that the briefing on summary judgment would be reiterated, *see* RCFC Appendix A ¶ 14 (requiring a Memorandum of Fact and Law), the parties can limit their memoranda to a discussion of what they seek to prove through their witnesses and documentary evidence.

ignated the contracting officer to perform these functions.

....

(9) Establish final indirect cost rates and billing rates for those contractors meeting the criteria for contracting officer determination in Subpart 42.7.

....

(11) In connection with Cost Accounting Standards (see 48 CFR 30.601 and 48 CFR Chapter 99 (FAR Appendix))—

....

(iii) Determine the contractor's compliance with Cost Accounting Standards and disclosure statements, if applicable[.]