ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeals of -                                    )
                                               )
A4 Construction Company, Inc.                  )      ASBCA Nos. 63252, 63456
                                               )                    63626, 63961
                                               )
Under Contract Nos. W9128F-19-C-0016           )
                    W9128F-19-C-0018            )

APPEARANCE FOR THE APPELLANT:                  Denver C. Snuffer, Jr., Esq.
                                                 Nelson, Snuffer, Dahle & Poulsen, P.C.
                                                 Sandy, UT

APPEARANCES FOR THE GOVERNMENT:                Michael P. Goodman, Esq.
                                                 Engineer Chief Trial Attorney
                                               Jacob W. Harberg, Esq.
                                               Thomas J. Tracy, Esq.
                                                 Engineer Trial Attorneys
                                                 U.S. Army Engineer District, Omaha

OPINION BY ADMINISTRATIVE JUDGE TAYLOR ON THE GOVERNMENT'S
PARTIAL MOTION FOR SUMMARY JUDGMENT

The United States Army Corps of Engineers (USACE or government) awarded
two contracts to A4 Construction Company, Inc. (A4) to design and construct training
facilities for the United States Special Forces at Fort Carson, Colorado. The
government terminated Contract No. W9128F-19-C-0016 (the Mountaineering
Contract) for default (Mountaineering R4, tab 3).[1] A4 appealed that default
termination to the Board, and the Board docketed the appeal as ASBCA No. 63252.
A4 then submitted numerous claims on the Mountaineering Contract to the USACE
contracting officer (Mountaineering R4, tab 86). The USACE contracting officer
denied the claims, and A4 appealed that decision to the Board (Mountaineering R4,
tab 88). The Board assigned ASBCA No. 63456 to the appeal. On March 28, 2022,
the USACE terminated Contract No. W9128F-19-C-0018 (the HPTC Contract) for
default (HPTC R4, tab 99). A4 appealed that termination for default to the United

_____

[1] The R4 file citations are to the government's revised Rule 4 file submitted May 16,
    2024. In that Rule 4 file, the government listed the documents related to the
    Mountaineering Contract as "Tab 2-XXX". The government listed the
    documents related to the HPTC Contract as "Tab 3-XXX". For ease of
    reference, the Board drops the references to "Tab 2" and "Tab 3" and cites these
    documents as "Mountaineering R4, tab X" and "HPTC R4, tab X").

States Court of Federal Claims.[2]  A4 then submitted various equitable adjustment claims on the HPTC Contract to the USACE contracting officer (HPTC R4, tab 2).  The USACE contracting officer subsequently denied those claims (HPTC R4, tab 3).  A4 appealed that denial to the Board, and the Board docketed the appeal as ASBCA No. 63626.

In October 2023, the USACE filed a motion to dismiss ASBCA No. 63456 for failure to state a claim.  The Board partially granted the government's motion and struck three complaint paragraphs from that appeal due to A4's failure to provide a sum certain amount for each of those distinct claims.[3]  A4 subsequently submitted new claims for those items with sum certain amounts which the contracting officer summarily denied.  A4 appealed that denial to the Board, and the Board assigned ASBCA No. 63961 to the appeal.  The Board consolidated all four appeals.[4]

Now pending before the Board is the government's partial motion for summary judgment on eight of A4's claims in ASBCA Nos. 63252 and 63456 and five of A4's claims in ASBCA No. 63626.[5]  The government contends the parties previously resolved those claims through bilateral modifications many of which contained specific releases.  A4 responds that some of those modifications do not address the subject matter of its claims, there was no meeting of the minds on the modifications, and it signed the modifications under duress following the government's assurance that A4 could later bring similar claims.  For the reasons discussed below, we partially grant the government's motion.

---

[2] The parties indicate the Court of Federal Claims suspended that proceeding pending the outcome of the Board appeals.

[3] *See A4 Construction Company, Inc.*, ASBCA No. 63252 *et al.*, 24-1 BCA ¶ 38,578.

[4] While ASBCA No. 63961 is consolidated with ASBCA Nos. 63252, 63456 and 63626, this motion does not apply to that appeal.  ASBCA No. 63961 involves the three equitable adjustment claims the Board previously dismissed for failing to state a sum certain amount.  Those claims include the Mountaineering Contract earthquake delay and impact claim, the COVID-19 related impacts, and delays resulting from replacing the subcontractor BZ Phase.

[5] In its summary judgment motion, the government initially lists six mountaineering contract claims (gov't mot. at 5).  The government, however, does not include A4's earthquake delay claim in this listing even though the government discusses that claim in its argument (*id.* at 34-35).  In addition, the government lists A4's BZ Phase subcontractor and July 2021 flood claims as one item (*id.* at 5).  In our decision, we separately address each of A4's eight Mountaineering Contract claims for which the government moves for summary judgment.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

The government included a statement of undisputed material facts with its motion (gov't mot. at 6-23) (GSUMF). In its opposition, appellant responded to the government's statement of undisputed material facts and provided some additional material facts (app. opp'n at 29-38) (ASUMF). The following facts are undisputed or uncontroverted.

The Contract Awards

1. On April 19, 2019, the USACE awarded the fixed-price Mountaineering Contract to A4 to design and construct a special operations forces mountaineering facility (the mountaineering project) at Fort Carson, Colorado (Mountaineering R4, tab 4).

2. On May 3, 2019, the USACE awarded the fixed-price HPTC Contract to A4 to design and construct a special operations forces human performance training center (the HPTC project) at Fort Carson, Colorado (HPTC R4, tab 5).

3. The USACE issued A4 notices to proceed (NTP) for both contracts on June 11, 2019 (Mountaineering R4, tab 6; HPTC R4, tab 6). The original contract completion date (CCD) for both contracts was May 31, 2021 (gov't mot. at 7; GSUMF ¶ 3).

The Eight Mountaineering Contract Claims

March 2020 Earthquake & COVID-19 Claim

4. On June 11, 2020, A4 submitted a letter to the USACE requesting a 60 working day no cost time extension to the Mountaineering Contract due to a March 2020 earthquake and COVID-19 impacts (Mountaineering Contract R4, tab 86 at 7101-02). A4 claimed an earthquake in Utah resulted in its architect being out of communication for two days (id. at 7101). A4 also claimed the COVID-19 pandemic caused workflow disruptions (id. at 7101-02).

5. A4 and the USACE subsequently agreed to Mountaineering Contract bilateral Modification No. A00001, with an effective date of July 17, 2020, to address the adverse weather, earthquake and COVID-19 impacts during the period of March 1, 2020, through June 30, 2020 (Mountaineering R4, tab 8). Modification No. A00001 increased the contract duration by 14 days – two days due to the earthquake and 12 days due to COVID-19 (id. at 4336). The modification indicated the parties "understood and agreed" the contract would be extended zero days for the weather impact during that period (id.) Mr. Shawn Anderson electronically signed the

3

modification on A4's behalf (*id.* at 4335).  Mr. Anderson was A4's vice president (gov't mot. at 7; GSUMF ¶ 5).

6.    Page three of the modification contained a standard release.  That release stated:

> In consideration of the modification(s) agreed to herein, the contractor hereby releases the government from any and all liability under this contract for further equitable adjustments attributable to such facts or circumstances.  It is understood and agreed that the adjustment to the contract price and time for performance set forth herein is inclusive of all costs and time incurred by the contractor as a consequence of this modification individually and collectively with other modifications including, but not limited to, those for delay, impact, inefficiency and extended field and home office overhead.

(Mountaineering R4, tab 8 at 4337)

7.    In its June 22, 2022, claim, A4 referenced its June 11, 2020, letter and discussed how its architect was out of communication for two days due to the earthquake (Mountaineering R4, tab 86 at 6762).[6]

July 2020 Flooding

8.    On July 21, 2020, A4 notified the USACE that the July 15, 2020, heavy rain resulted in drainage flowing onto the site from the surrounding areas impacting the mountaineering project (Mountaineering R4, tab 20).  A4 indicated it incurred large expenses to prevent erosion control and remediate the site (*id.*).  A4 requested the USACE provide a solution to contain the storm water from the adjoining properties (*id.*).

9.    On August 12, 2020, the parties signed contract Modification No. A00002 extending the Mountaineering Contract CCD 31 calendar days due to COVID-19 delays occurring in July 2020 (Mountaineering R4, tab 9 at 4345).  Mr. Anderson electronically signed the modification on behalf of A4 (*id.*).  The modification also

---

[6] While the Board dismissed A4's equitable adjustment delay claim resulting from the earthquake in its decision on the government's motion to dismiss for failure to state a sum certain, the government correctly notes A4 raised this delay claim as a defense in its appeal of the government's termination for default.

indicated a delay in contract performance occurred during the month of July 2020 due to adverse weather conditions (*id.*). The modification, however, stated the parties "understood and agreed" that the contract price remained unchanged, and the contract would not be extended due to the weather impact since the modification awarded A4 31 calendar delay days in July 2020 due to COVID-19 impacts (*id.*).

10. Modification No. A00002 contained the following release language on page three:

> In consideration of the modification(s) agreed to herein, the contractor hereby releases the government from any and all liability under this contract for further equitable adjustments attributable to such facts or circumstances. It is understood and agreed that the adjustment to the contract price and time for performance set forth herein is inclusive of all costs and time incurred by the contractor as a consequence of this modification individually and collectively with other modifications including, but not limited to, those for delay, impact, inefficiency and extended field and home office overhead.

(*Id.* at 4347)

11. On October 26, 2021, the government issued a show cause notice to A4 for failure to make progress on the mountaineering project (Mountaineering R4, tab 71). In its response, A4 alleged the July 2020 flooding resulted in 33 delay days to the project (Mountaineering R4, tab 36 at 4740). A4 referenced documentation addressing the storm water drainage issue (*see, e.g., id.* at 4745). The government responded that the daily reports showed five critical delay days due to weather in July 2020 which did not exceed the five anticipated adverse weather days (Mountaineering R4, tab 72 at 5014). The government further noted Modification No. A00002 already included a 31 calendar day contract extension for the month of July 2020 due to COVID-19 impacts and any delays resulting from weather in July would have been concurrent (*id.*). On December 3, 2021, A4 indicated it was withdrawing its claim for delay days associated with the July 2020 flooding (Mountaineering R4, tab 37 at 4827).

12. In its June 22, 2022, claim, A4 reasserted its claim for additional time and costs resulting from the July 2020 flooding (Mountaineering R4, tab 86 at 6761-62). A4 did not specify a monetary amount, or a requested number of delay days associated with the July 2020 flood (*id.*).

Gas Piping Change

13.   On August 25, 2020, the USACE requested A4 submit a proposal for various changes to the Mountaineering Contract including a change in the gas main line from two to four inches (Mountaineering R4, tab 54).  On August 31, 2021, A4 submitted a revised proposal indicating an increased cost of $6,976 for the changed gas main pipeline and a $5,600 credit for the removal of the electrical lift station resulting in a net increased cost of $1,612 (Mountaineering R4, tab 35 at 4737).  A4's proposal requested zero additional contract days (*id.*).

14.   On October 28, 2021, the USACE and A4 signed bilateral Modification No. A00007 increasing the contract price by $1,612 for the gas main line and elimination of the electrical lift station changes (Mountaineering R4, tab 15 at 4393).  Mr. Anderson electronically signed the modification on A4's behalf (*id.*).  The modification indicated the contract's performance period remained the same (*id.*).

15.   Modification No. A00007 contained the following release language on page three:

> In consideration of the modification(s) agreed to herein, the contractor hereby releases the government from any and all liability under this contract for further equitable adjustments attributable to such facts or circumstances.  It is understood and agreed that the adjustment to the contract price and time for performance set forth herein is inclusive of all costs and time incurred by the contractor as a consequence of this modification individually and collectively with other modifications including, but not limited to, those for delay, impact, inefficiency and extended field and home office overhead.

(*Id.* at 4395)

16.   In its Mountaineering Contract claim, A4 seeks $6,980 for the gas piping change and three delay days (Mountaineering R4, tab 86 at 6764, 6766).

Option CLINS 0004, 0006 and 0007

17.   The Mountaineering Contract included optional fixed-price contract line-items (CLINS) for:

6

| Item No. | Description | Amount |
|---|---|---|
| 0004 [Option] | Entire work to complete the Procurement and Installation of FF&E for the basic floor plan. | $268,431.00 |
| 0006 [Option] | Entire work to complete the Procurement and Installation of Electronic Security Systems. | $71,467.00 |
| 0007 [Option] | Entire work to complete the Procurement and Installation of A/V system equipment and devices. | $62,718.00 |

(Mountaineering R4, tab 4 at 3014)

18.    The Mountaineering Contract Request for Proposals (RFP) stated the USACE reserved the right to exercise option CLINS Nos. 0004 through 0007 within 365 days of the NTP (Mountaineering R4, tab 5 at 3083).  On March 4, 2020, the USACE requested A4 hold the pricing on those options through March 31, 2021 (gov't mot., ex. A).[7]  Mr. Anderson electronically signed the letter indicating A4's agreement to hold the prices for those options through March 31, 2021 (*id.*).

19.    On March 8, 2021, the USACE provided A4 with a Notice of Intent to exercise Option CLINs 0004, 0006 and 0007 at A4's proposed prices (gov't mot., ex. B at 1).  On March 11, 2021, Mr. Anderson electronically signed the notice acknowledging the government's intent to exercise the options (*id.* at 2).

20.    On March 30, 2021, the government issued Modification No. P00002 pursuant to Federal Acquisition Regulation (FAR) 52.217-7, exercising Option CLINs 0004, 0006 and 0007 at A4's proposed prices in the amounts of $268,431, $71,467, and $62,718 (Mountaineering R4, tab 12 at 4372).  Mr. Anderson electronically signed the modification acknowledging the government's exercise of the option CLINs (*id.*). Modification No. P00002 did not include a release (Mountaineering R4, tab 12).

---

[7] A4 objects to the government's motion exhibits on the grounds that the government did not include those documents in the Rule 4 file (app. opp'n at 24-29).  Board Rule 4, however, permits the government to supplement the appeal file at such times as are fair and reasonable.  The government's exhibits are routine correspondence between the parties during contract performance and other documents routinely kept in the contract file.  We find the government's submission of these documents as exhibits to its motion to be fair and reasonable and deny A4's objection.  We note, however, exhibits to motions are not part of the appeal file.

21.   In its June 22, 2022 claim, A4 sought an equitable adjustment in the amount of $80,723.01 for the alleged increased costs incurred by its subcontractor to procure and install the electronic security system (Option 0006) and $601,010.49 in increased costs for its subcontractor to procure and install the audio-visual system and devices (Option 0007) due to COVID-19 impacts (Mountaineering R4, tab 86 at 6761).  A4 also sought an unspecified amount of delay days associated with the government's award of those options (*id.*).[8]

BZ Phase Subcontractor and July 2021 Flooding Claims

22.   BZ Phase, a subcontractor, apparently abandoned the job of pouring and finishing interior concrete slabs on the mountaineering project (Mountaineering R4, tab 36 at 4741).  Due to the COVID-19 pandemic caused labor shortages and alleged additional government requirements, A4 had difficulty scheduling and obtaining a replacement concrete subcontractor (*id.*).  In its response to the government's October 26, 2021, show cause notice, A4 requested 69-delay days be added to the contract completion date due to this COVID-19 caused delay (Mountaineering R4, tab 36 at 4741).  A4 subsequently reduced its requested delay days to 67 (Mountaineering R4, tab 37 at 4831).

23.   On December 20, 2021, the USACE notified A4 that it found merit to 64 of the requested 67-delay days associated with A4's BZ Phase claim for the period of September 13, 2021, through November 16, 2021 (Mountaineering R4, tab 73 at 5019).  The government noted the first workday impacted by BZ Phase's departure was September 13 and not September 10 (*id.*).

24.   In its June 22, 2022, claim, A4 indicated it paid increased costs to replace its BZ Phase concrete subcontractor (Mountaineering R4, tab 86 at 6764).  A4 did not, however, quantify that claim.  In our previous decision, we dismissed A4's BZ Phase claim for failing to state a sum certain.  *A4 Construction Co.*, 24-1 BCA ¶ 38,578 at 187,506.  On June 24, 2024, A4 resubmitted its claim related to its BZ Phase subcontractor requesting 69-delay days at $2,016.44 per day for a total of $139,134.36.  A4's appeal of that claim is currently pending before the Board in ASBCA No. 63961.

25.   In its response to the government's October 26, 2021, show cause notice, A4 also requested an additional 77-delay days allegedly due to July 2021 flooding that

---

[8] A4 asserts it provided a critical path method (CPM) analysis at exhibit 31 to its claim indicating the delay days to the mountaineering project caused by the COVID-19 impact on its subcontractors in performing these options (Mountaineering R4, tab 86 at 7148).  The Board, however, is unable to determine the number of delay days A4 associates with the options from this exhibit.

resulted in run off from other government sites impacting the mountaineering project (Mountaineering R4, tab 36 at 4740). These 77-delay days included 49-delay days to A4's work, six-delay days resulting from a flooded Berwick communications box, and 22-delay days resulting from delays in replacing damaged Void Forms due to COVID-19 supply chain delays (*id.*).

26. In its December 20, 2021, letter, the government responded that it identified only three weather delay days during July 2021 which did not exceed the contractually allotted five weather days for July (Mountaineering R4, tab 73 at 5018). The government further found that it identified a Void Form delivery period of 20 days from August 11, 2021, to August 31, 2021 (*id.* at 5019). The government estimated a normal delivery period of three days prior to COVID-19 supply chain issues (*id.*). The government concluded A4 was entitled to 17 of its requested 22-delay days due to the extended period to replace the Void Forms caused by COVID-19 (*id.* at 5018-19).

27. In its June 22, 2022, claim, A4 again asserted the flood runoff from the July 2021 storm from neighboring government sites resulted in delays to the mountaineering project (Mountaineering R4, tab 86 at 6762). A4 claimed this flooding resulted in 77-delay days and $155,265.88 in additional costs (*id.*).

28. A4 and the USACE executed Mountaineering Contract bilateral Modification No. P00003, with an effective date of January 5, 2022, to address certain issues discussed in the government's December 20, 2021, letter responding to A4's response to the government's show cause notice (Mountaineering R4, tab 16 at 4397). The modification indicated the government had determined "a delay in contract performance of the contract work was due to issues with weather conditions and sub-contractor impacts" (Mountaineering R4, tab 16 at 4397). The modification extended the contract period 81 days and indicated the parties "understood and agreed the contract price remains unchanged" (*id.*). The 81-day contract extension appears to have included the 64-day delay in replacing the BZ Phase subcontractor and the 17-day delay due to COVID-19 supply chain issues in replacing the Void Forms that were damaged in the July 2021 flooding (Mountaineering R4, tab 73 at 5019). Mr. Anderson signed the modification on A4's behalf (*id.*). The modification did not contain a release.

COVID-19/Weather Roofing Delays

29. On October 26, 2021, A4 requested an equitable adjustment of 14-delay days related to COVID-19 caused delays and adverse weather that prevented A4 from obtaining "Roofte[k] roofing materials" (Mountaineering R4, tab 36 at 4740). Rooftek was apparently scheduled to perform this work sometime in early 2021 (*id.* at 4808-09). The record is unclear as to when Rooftek performed the work and how A4 calculated the 14-delay day impact.

30.   The USACE responded to A4's request by indicating the parties had previously resolved any weather and COVID-19 related delays arising between March 1, 2021, and April 30, 2021, under bilateral Modification No. A00005 (Mountaineering R4, tab 72 at 5016).  Bilateral Modification No. A00005 extended the contract 19 calendar days for weather and eight calendar days for COVID-19 impacts (Mountaineering R4, tab 13 at 4376).  Mr. Anderson electronically signed the modification on A4's behalf (*id.* at 4375).  The weather impacts awarded under this modification apparently occurred in March, April and May 2021 while the COVID-19 impacts occurred in April and May 2021 (*id.* at 4376).

31.   Modification No. A00005 contained the following release language on page three:

> In consideration of the modification(s) agreed to herein, the contractor hereby releases the government from any and all liability under this contract for further equitable adjustments attributable to such facts or circumstances.  It is understood and agreed that the adjustment to the contract price and time for performance set forth herein is inclusive of all costs and time incurred by the contractor as a consequence of this modification individually and collectively with other modifications including, but not limited to, those for delay, impact, inefficiency and extended field and home office overhead.

(*Id.* at 4377)

32.   In a letter dated December 3, 2021, A4 agreed with the government's response and withdrew its request for delay days pertaining to the "Rooftek" supply delay (Mountaineering R4, tab 37 at 4830-31).  In its June 22, 2022, claim, however, A4 again asserted a 14-day delay claim in connection with the roofing delays (Mountaineering R4, tab 86 at 6763).

Other COVID-19 Related Impacts

33.   On September 3, 2020, A4 and the USACE entered into Mountaineering Contract bilateral Modification No. A00003 to address the adverse weather and COVID-19 impacts from August 1, 2020, to August 14, 2020 (Mountaineering R4, tab 10).  Mr. Anderson electronically signed the modification on A4's behalf (*id.* at 4354).  Modification No. A00003 extended the contract performance period by zero days due to the adverse weather and 14 calendar days due to COVID-19 impacts

10

during that period (*id.*).  The modification indicated the contract price remained unchanged (*id.*).

34.  Modification No. A00003 contained the following release language on page three:

> In consideration of the modification(s) agreed to herein, the contractor hereby releases the government from any and all liability under this contract for further equitable adjustments attributable to such facts or circumstances.  It is understood and agreed that the adjustment to the contract price and time for performance set forth herein is inclusive of all costs and time incurred by the contractor as a consequence of this modification individually and collectively with other modifications including, but not limited to, those for delay, impact, inefficiency and extended field and home office overhead.

(*Id.* at 4356)

35.  On March 22, 2021, A4 and the USACE executed Mountaineering Contract bilateral Modification No. A00004 to address weather and COVID-19 impacts during the period from August 15, 2020, to February 28, 2021 (Mountaineering R4, tab 11).  Modification No. A00004 extended the contract performance period for four days due to the adverse weather conditions and two days due to the COVID-19 impacts (*id.* at 4363).  The modification indicated both COVID-19 impact days occurred in September 2020 (*id.* at 4364).  The modification further indicated the contract price remained unchanged (*id.* at 4363).  Mr. Anderson electronically signed the modification on A4's behalf (*id.*).

36.  Modification No. A00004 contained the following release language on page three:

> In consideration of the modification(s) agreed to herein, the contractor hereby releases the government from any and all liability under this contract for further equitable adjustments attributable to such facts or circumstances.  It is understood and agreed that the adjustment to the contract price and time for performance set forth herein is inclusive of all costs and time incurred by the contractor as a consequence of this modification individually and collectively with other modifications including, but not

11

limited to, those for delay, impact, inefficiency and
extended field and home office overhead.

(*Id.* at 4365)

37. In its June 22, 2022, claim, A4 asserts the changes, differing site conditions and COVID-19 related delays on the Mountaineering Contract should have extended the contract performance time by 377 compensable days and entitled it to have the termination for default converted to a termination for convenience (Mountaineering R4, tab 86 at 6764).

The Five HPTC Contract Claims

Earthquake and COVID-19 Impact – Modification No. A00002

38. On June 11, 2020, A4 submitted a request to the USACE for a 50 working day no cost time extension on the HPTC Contract due to the March 2020 Utah earthquake and COVID-19 impacts (HPTC R4, tab 20). The government reviewed that request and calculated a 63-calendar day extension resulting from those impacts (gov't mot., ex. D). A4 concurred with the government's calculation (*id.*).

39. A4 and the USACE subsequently executed HPTC Contract bilateral Modification No. A00002, with an effective date of August 27, 2020, to extend the CCD for 63 days due to the Utah earthquake and COVID-19 impacts from March 2020 – August 2020 (HPTC R4, tab 7 at 11982). Mr. Anderson electronically signed the modification on A4's behalf (*id.*). The modification indicated the contract price remained unchanged (*id.*).

40. HPTC Contract Modification No. A00002 contained the following release language on pages two and three:

> In consideration of the modification(s) agreed to herein,
> the contractor hereby releases the government from any
> and all liability under this contract for further equitable
> adjustments attributable to such facts or circumstances. It
> is understood and agreed that the adjustment to the contract
> price and time for performance set forth herein is inclusive
> of all costs and time incurred by the contractor as a
> consequence of this modification individually and

collectively with other modifications including, but not
limited to, those for delay, impact, inefficiency and
extended field and home office overhead.

(*Id.* at 11983-84)

41.   In its November 9, 2022, claim, A4 again asserted it was entitled to two
delay days resulting from the March 2020 earthquake and an unspecified number of
COVID related delays (HPTC R4, tab 2 at 9078, 9082).[9]

Fiber Optic Cables Re-Route – Modification No. A00004

42.   On May 29, 2020, the USACE requested A4 submit a proposal for an
anticipated change order required to reroute a fiber optic cable outside the HPTC
building footprint (HPTC R4, tab 76).  A4 submitted its proposal on July 22, 2020
(HPTC R4, tab 28).  In that proposal, HPTC indicated the cost associated with
rerouting the fiber optic cable would be $3,200 (*id.*).

43.   A4 and the USACE subsequently executed HPTC Contract Modification
No. A00004, with an effective date of September 3, 2020, increasing the contract price
by $3,200 due to rerouting the fiber optic cable (HPTC R4, tab 9 at 11992).
Mr. Anderson electronically signed the modification on A4's behalf (*id.* at 11991).
The modification indicated the contract time remained unchanged (*id.*).

44.   HPTC Contract Modification No. A00004 contained the following release
language on pages two and three:

> In consideration of the modification(s) agreed to herein,
> the contractor hereby releases the government from any
> and all liability under this contract for further equitable
> adjustments attributable to such facts or circumstances.  It
> is understood and agreed that the adjustment to the contract
> price and time for performance set forth herein is inclusive
> of all costs and time incurred by the contractor as a
> consequence of this modification individually and

---

[9] In its claim, A4 references an attached impact and delay analysis at exhibit 5 that
allegedly shows how the critical path was impacted by the various changes and
delays (HPTC R4, tab 2 at 9082).  Exhibit 5, however, is not included in the
Rule 4 file.

collectively with other modifications including, but not limited to, those for delay, impact, inefficiency and extended field and home office overhead.

(*Id.* at 11992-93)

46. A4's HPTC Contract claim includes a request for 175-days of delay and costs associated with a "fiber optic vault change" (HPTC R4, tab 2 at 9084). That claim appears to involve A4's removal of a concrete communications vault containing fiber optic cables (*id.* at 9080-81). A4 discovered the vault while excavating the site (*id.* at 9080). A4's claim does not appear to contain a request for an equitable adjustment related to rerouting a fiber optic cable – the subject of Modification No. A00004.

Hydroworx Pool Change - Modification No. P00003

46. On May 28, 2020, the USACE requested A4 submit a proposal for "Floor openings and supports for the Hydroworx 2000 prefabricated therapy pool" as part of the HPTC project (HPTC R4, tab 75). On May 20, 2021, A4 submitted a revised negotiated price of $300,207 for the Hydroworx therapy and plunge pools (HPTC R4, tab 52). A4's proposal did not request any additional contract days (*id.* at 12524).

47. A4 and the USACE subsequently executed HPTC Contract Modification No. P00003, with an effective date of June 25, 2021, increasing the contract price by $300,207 for the Hydroworx 2000 therapy pool change (HPTC R4, tab 15 at 12015). Mr. Anderson electronically signed the modification on A4's behalf (*id.* at 12014). The modification indicated no change in the contract time (*id.*).

48. Modification No. P00003 contained the following release language on pages two and three:

In consideration of the modification(s) agreed to herein, the contractor hereby releases the government from any and all liability under this contract for further equitable adjustments attributable to such facts or circumstances. It is understood and agreed that the adjustment to the contract price and time for performance set forth herein is inclusive of all costs and time incurred by the contractor as a consequence of this modification individually and

14

collectively with other modifications including, but not
limited to, those for delay, impact, inefficiency and
extended field and home office overhead.

(*Id.* at 12015-16)

49.   In its November 9, 2022, claim, A4 alleges it is entitled to an unspecified number of delay days and damages resulting from the Hydroworx pool change (HPTC R4, tab 2 at 9080).

Cognitive Lab Change – Modification No. P00004

50.   On October 27, 2020, the USACE requested A4 submit a proposal for the design and construction of a cognitive training lab within the HPTC training center (HPTC R4, tab 78).  On May 13, 2021, A4 provided a revised cost estimate of $955,207 and an additional 77 contract days for the cognitive training lab (HPTC R4, tab 47 at 12486).

51.   A4 and the USACE subsequently executed HPTC Contract Modification No. P00004, with an effective date of June 30, 2021, that increased the contract price by $955,207 and extended the contract performance period for 77 calendar days for the cognitive training lab change (HPTC R4, tab 16 at 12019).  Mr. Anderson electronically signed the modification on A4's behalf (*id.* at 12017).

52.   Modification No. P00004 contained the following release language on page three:

> In consideration of the modification(s) agreed to herein,
> the contractor hereby releases the government from any
> and all liability under this contract for further equitable
> adjustments attributable to such facts or circumstances.  It
> is understood and agreed that the adjustment to the contract
> price and time for performance set forth herein is inclusive
> of all costs and time incurred by the contractor as a
> consequence of this modification individually and
> collectively with other modifications including, but not
> limited to, those for delay, impact, inefficiency and
> extended field and home office overhead.

(*Id.* at 12019)

53.   In its November 9, 2022, claim, A4 alleges it is entitled to 246 additional delay days resulting from the cognitive lab change (HPTC R4, tab 2 at 9080).

15

Gym Flooring Changes - Modification No. A00007

54.  On April 23, 2021, the USACE requested A4 submit a proposal for providing alternative gym flooring at the HPTC training facility (HPTC R4, tab 86). On May 24, 2021, A4 provided a revised cost estimate for the alternative gym flooring in the amount of $45,426 (HPTC R4, tab 53 at 12557).  A4 indicated it was removing the previously requested additional contract days for this change from its proposal (*id.* at 12556).

55.  A4 and the USACE subsequently executed HPTC Contract Modification No. A00007, with an effective date of June 2, 2021, increasing the contract price by $45,426 for the alternative gym flooring change (HPTC R4, tab 14 at 12012). Mr. Anderson electronically signed the modification on A4's behalf (*id.* at 12011). The modification indicated no change in the contract time (*id.*).

56.  Modification No. A00007 contained the following release language on page two:

> In consideration of the modification(s) agreed to herein, the contractor hereby releases the government from any and all liability under this contract for further equitable adjustments attributable to such facts or circumstances.  It is understood and agreed that the adjustment to the contract price and time for performance set forth herein is inclusive of all costs and time incurred by the contractor as a consequence of this modification individually and collectively with other modifications including, but not limited to, those for delay, impact, inefficiency and extended field and home office overhead.

(*Id.* at 12012)

57.  In its November 9, 2022, claim, A4 alleges it is entitled to 35 additional delay days resulting from the alternative gym flooring change (HPTC R4, tab 2 at 9081).

DECISION

**I.      The Parties' Contentions**

The government moves for summary judgment on eight of A4's claims on the Mountaineering Contract and five of A4's claims on the HPTC Contract based on its

affirmative defenses of accord and satisfaction and/or release. The government contends A4 signed bilateral modifications that explicitly resolved each of those thirteen claims (gov't mot. at 4-6). The government further contends eleven of the thirteen modifications at issue in this motion contain unambiguous release language in which A4 specifically released its rights to any further equitable adjustments attributable to the facts and circumstances giving rise to the modifications (*id.* at 5-6).

A4 responds to the government's motion by first contending that there was no meeting of the minds on the modifications since Mr. Anderson, who signed the modifications on A4's behalf, never read the release language since that language appeared on pages following the signature page (app. opp'n at 38-39). A4 next asserts it never intended to release its equitable adjustment claims since it believed the government's assurances that it could still pursue its claims after it signed the modifications (*id.* at 39). A4 further contends the government waived its right to enforce Modification Nos. A00001, A00003 and A00004 on the mountaineering project since those modifications awarded A4 delay days for COVID-19 but not the weather impacts (*id.* at 39-40). A4 asserts the government's subsequent award of an additional 17 days related to the flooding of the mountaineering job site and 17 days for the Void Forms waived its rights to enforce those modifications (*id.* at 39-40). A4 next contends that, contrary to the government's assertions, some of the modifications do not apply to A4's claims since the modifications at issue do not specifically address or resolve those claims (*id.* at 40-41). A4 also asserts the releases are unenforceable since the government obtained them by means of economic duress, and it would be unconscionable to enforce them due to the "gross inequity of bargaining power" between the parties (*id.* at 41-43). Finally, A4 claims the modifications are unenforceable since they were contrary to the government's COVID-19 policy (*id.* at 43-44).

The government responds that A4 is bound by the clear and unambiguous contract modification language (gov't reply at 4). Moreover, the government contends it did not waive its rights to enforce Modification Nos. A00001, A00003 and A00004 on the mountaineering project since each of those modifications dealt with weather delays for specific separate earlier time periods than its award of the 17 delay days for the COVID-19 impact in replacing the Void Forms in Mountaineering Contract Modification No. P00003 (*id.* at 7-8). The government also contends A4 failed to identify any government wrongful coercive acts establishing economic duress (*id.* at 10-14). Finally, the government asserts USACE employees followed existing COVID-19 policies (*id.* at 14).

## II.     Summary Judgment Standard

"Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *First Commerce Corp. v. United States*, 335 F.3d 1373, 1379 (Fed. Cir. 2003); FED. R. CIV. P. 56(a). A material fact is one that makes a difference in the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "Substantive law dictates the parties' relative burdens, and defines those 'material' facts that may affect the outcome of a particular cause of action." *Osborne Constr. Co.*, ASBCA No. 55030, 09-1 BCA ¶ 34,083 at 168. "The moving party bears the burden of establishing the absence of any genuine issue of material fact and all significant doubt over factual issues must be resolved in favor of the party opposing summary judgment." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

Once the moving party has met its burden of establishing the absence of disputed material facts, then the non-moving party must set forth specific facts, not conclusory statements, or bare assertions, to defeat the motion. *Mingus Constructors*, 812 F.2d at 1390-91; *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 626-27 (Fed. Cir. 1984). "[M]ere denials or conclusory statements are insufficient." *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1116 (Fed. Cir. 1985) (citing *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 836 (Fed. Cir. 1984)). A dispute is genuine only if, on the entirety of the record, a reasonable factfinder could resolve a factual matter in favor of the nonmovant. *Liberty Lobby*, 477 U.S. at 248. The evidence must be viewed in the light most favorable to the party opposing the motion. *Crown Operations Int'l, Ltd. v. Solutia Inc.*, 289 F.3d 1367, 1375 (Fed. Cir. 2002)

## III.     Accord and Satisfaction and Release

The government seeks summary judgment on the thirteen claims at issue in this motion upon its affirmative defenses of accord and satisfaction and release. Accord and satisfaction and release are separate affirmative defenses. *Holland v. United States*, 621 F.3d 1366, 1377 (Fed. Cir. 2010). A contract modification may, however, be both a release and an accord and satisfaction. *Id.* An accord and satisfaction occurs when "some performance other than that which was claimed to be due is accepted as full satisfaction of the claim." *Id.* "A release is a contract whereby a party abandons a claim or relinquishes a right that could be asserted against another." *Id.* A "release is contractual in nature and must be interpreted in the same manner as any other contract term or provision." *Korte-Fusco Joint Venture*, ASBCA No. 59767, 15-1 BCA ¶ 36,158 at 176,455 (citing *Bell BCI Co. v. United States*, 570 F.3d 1337, 1341 (Fed. Cir. 2009)). If the release language is "clear and unambiguous" it must be given its plain and ordinary meaning. *Bell BCI Co.*, 570 F.3d at 1341. The government bears

18

the burden of proof on its defenses of accord and satisfaction and release. *Sonabend Company*, ASBCA No. 63359, 24-1 BCA ¶ 38,482 at 187,033.

To establish accord and satisfaction, the government must prove (1) proper subject matter; (2) competent parties; (3) a meeting of the parties' minds; and (4) consideration. *Bell BCI Co.*, 570 F.3d at 1341. The parties do not dispute that competent parties signed the modifications or that they included consideration. Rather, A4 contends accord and satisfaction is not applicable in these appeals since there was no "meeting of the minds" on the modifications because A4 did not intend the modifications to cover its asserted claims (app. opp'n at 42). "For there to be an accord and satisfaction, there must be mutual agreement between the parties with the intention clearly stated and known to both the contractor and the government." *Collazo Contractors, Inc*., ASBCA No. 53925, 05-2 BCA ¶ 33,035 at 163,747 (citing *Metric Constructors, Inc*., ASBCA No. 46279, 94-1 BCA ¶ 26,532 at 132,058, *recon. denied*, 94-2 BCA ¶ 26,827.

A4 also contends it did not intend to release any of its claims (app. opp'n at 38). The release language in the modifications at issue in these appeals clearly stated A4 "releases the government from any and all liability under this contract for further equitable adjustments attributable to such facts or circumstances" (SOF ¶¶ 6, 9, 14, 30, 33, 35, 38, 41, 45, 48, 51). Based on our reading of the modification, the release language is plain and unambiguous. *See Tanik Construction Company, Inc*., ASBCA No. 62527, 22-1 BCA ¶ 38,147 at 185,283-84 (finding waiver language to be unambiguous). As such, A4 released the government from any additional liability for further equitable adjustments to the extent the modifications related to the facts and circumstances giving rise to those A4 claims that were the subject of the modifications.

We must, therefore, determine whether the parties intended the modifications to cover A4's asserted claims, and whether those claims were attributable to the facts and circumstances addressed by the releases.

## A.     The Mountaineering Contract Claims

**Earthquake Impacts**

The government first moves for summary judgment on any "delays and impacts" A4 may be asserting resulting from the March 2020 earthquake (gov't mot. at 34-35). In its complaint filed in the appeal of the government's termination for default of the mountaineering contract, A4 included two catch all paragraphs referencing delays it intended to submit to the contracting officer (compl. ¶¶ 5(K), 5(L)). A4 subsequently submitted a claim for delay resulting from the March 2020

earthquake in its June 22, 2022, equitable adjustment claim but did not specify the number of delay days associated with that event (SOF ¶ 7).

The government contends any A4 claims for delay resulting from the March 2020 earthquake should be barred under the doctrine of accord and satisfaction since A4 and the government entered into Mountaineering Contract bilateral Modification No. A00001 that addressed the earthquake delay (gov't mot. at 34-35). Furthermore, the government contends A4 released those claims since Modification No. A00001 contained a plain and unambiguous release (gov't mot. at 35).

Modification No. A00001 meets all the requirements for an accord and satisfaction on A4's earthquake claim. Competent parties signed the modification, and it awarded delay days resulting from the earthquake (SOF ¶ 5). Moreover, A4 agrees the modification awarded it two delay days resulting from the earthquake (app. opp'n at 39). The modification covers the same earthquake delay claim A4 included in its June 22, 2022, claim.

Furthermore, we agree with the government that A4 released the government from any liability for further equitable adjustments related to the earthquake when it signed Modification No. A00001 containing the plain and unambiguous release. The release language clearly states A4 "releases the government from any and all liability under this contract for further equitable adjustments attributable to such facts or circumstances" (SOF ¶ 6). The "facts or circumstances" that are the subject of the modification include the earthquake impacts. We therefore grant the government's summary judgment on any "delays and impacts" A4 asserts arose from the March 2020 earthquake.

**July 2020 Flooding Claim**

The government next moves for summary judgment on A4's claim for time and money resulting from the July 2020 flooding (gov't mot. at 35-36). The government contends Mountaineering Contract Modification No. A00002 covered all A4's weather and COVID-19 impact claims that occurred in July 2020 (*id.* at 36). The government further points out Modification No. A00002 included an unambiguous release (*id.*).

Mountaineering Contract Modification No. A00002 addressed the delay in contract performance that occurred in July 2020 due to the adverse weather and COVID-19 delays (SOF ¶ 9). The modification indicated the parties "understood and agreed" the contract time would be increased 31 calendar days for COVID-19 delays occurring in July 2020 but zero days for the adverse weather impact (*id.*). The parties also agreed the contract price remained unchanged (*id.*).

Modification No. A00002 addressed A4's claims for impacts in July 2020 arising from the July flooding. Moreover, the modification's release relates to further equitable adjustments attributable to Modification No. A00002's facts and circumstances (SOF ¶ 9). Those facts and circumstances include the weather impacts in July 2020 resulting from the flooding. We grant the government's motion on A4's claims for time and money for impacts occurring in July 2020 resulting from the flooding. We note, however, that A4 claimed 33-delay days resulting from this flooding in its initial response to the government's show cause notice (SOF ¶ 11). Since Modification No. A00002 addresses impacts occurring only in July 2020, A4 may continue to pursue any potential claims arising from the July 2020 flooding that impact other months.

**Gas Piping Change**

The government next moves for summary judgment on A4's claims related to the change in the gas piping (gov't mot. at 36-37). A4 seeks a $6,980 equitable adjustment and three delay days as result of this change (SOF ¶ 16). On August 31, 2021, A4 submitted a revised proposal indicating an increase cost of $6,976 for the changed gas main pipeline and a $5,600 credit for the removal of the electrical lift station (SOF ¶ 13). The parties subsequently signed Mountaineering Contract Modification No. A00007 in October 2021 to revise the contract requirements for the electrical lift station, emergency access and gas main line change resulting in an overall $1,612 increase in the contract price (SOF ¶ 14). The modification indicated no change in contract time resulting from those changes (*id.*).

Modification No. A00007 clearly addresses the gas piping change and accepts A4's proposed price for that change (less the electrical lift station credit) (*id.*). Moreover, A4 released the government from any additional costs and delays associated with the gas main pipeline change when it signed Modification No. A00007 containing a clear and unambiguous release that released the government from "any and all liability" attributable to that change (SOF ¶ 15). We grant the government's motion on A4's claims for time and money resulting from the gas piping change.

**Options 0004, 0006 & 0007 Claim**

The government next moves for summary judgment on A4's claims related to the exercise of Options 0004, 0006 and 0007 contending Modification No. P00002 acts as an accord and satisfaction to those claims (gov't mot. at 37-41). A4 seeks an equitable adjustment in the amount of $80,723.01 for the alleged increased costs its subcontractor incurred to procure and install the electronic security system (Option 0006) and $601,010.49 for the alleged increased costs its subcontractor incurred to procure and install the audio-visual system and devices (Option 0007)

21

(SOF ¶ 21).[10]  A4 alleges its subcontractors incurred those increased costs due to the COVID-19 pandemic impacts (*id.*).  A4 also seeks an unspecified number of additional delay days (*id.*).

On March 4, 2020, the USACE requested A4 hold the pricing on those options through March 31, 2021 (SOF ¶ 18).  A4 agreed to hold its proposal prices but now alleges it did so without knowing COVID-19 would result in severe and unanticipated disruptions to its vendors (app. opp'n at 30).  On March 30, 2021, the government exercised option CLINs 0004, 0006 and 0007 via Modification No. P00002 at A4's proposed prices (SOF ¶ 20).  Mr. Anderson electronically signed the modification (*id.*).

The government contends A4 waived all its claims related to these options when it signed Modification No. P00002 (gov't mot. at 38).  Modification No. P00002, however, was the government's exercise of the option.  It did not address the substance of A4's increased cost claim resulting from its subcontractor's increased costs due to the COVID-19 pandemic.  Moreover, Modification No. P00002 did not contain a release.  In accordance with our review standard, the evidence must be viewed in a light most favorable to A4.  *Crown Operations*, 289 F.3d at 1375.  As such, we determine Modification No. P00002 does not act as an accord and satisfaction to A4's increased cost and delay claims resulting from its subcontractor's performance of those options.

However, even assuming A4 was unaware of the potential COVID-19 impact to its subcontractor's prices at the time it agreed to hold open its option prices in March 2020, the government would not be liable for A4's subcontractors' increased costs resulting from the COVID-19 pandemic.  FAR 16.202-1, Firm-Fixed-Price Contracts, clearly states the contract price on a firm-fixed-price contract "is not subject to any adjustment on the basis of the contractor's cost experience in performing the contract."  FAR 16.202-1.  The Board has routinely rejected contractor claims for increased subcontractor and vendor costs on fixed-price contracts resulting from the COVID-19 pandemic.  *See BCI Construction USA, Inc*., ASBCA No. 62657 *et al.*, 24-1 BCA ¶ 38,522 at 187,263 (government not liable for contractor's increased costs resulting from COVID-19 pandemic since firm-fixed price contract not subject to any adjustment based on the contractor's cost experience in performing the contract); *Ace Elec. Defense Sys*., ASBCA No. 63224, 22-1 BCA ¶ 38,213 at 185,568 (rejecting a claim under a fixed-price contract for increased vendor prices caused by the COVID-19 pandemic).  We conclude the government is not liable for any increased costs A4 may have incurred resulting from its subcontractors' increased costs in

---

[10] A4 is not seeking any increased costs in connection with Option CLIN 0004.

procuring and installing the electronic security and audio-visual systems on Option CLINs 0006 & 0007 resulting from the COVID-19 pandemic.

In its claim, A4 also asserts it is entitled to an unspecified number of delay days associated with the government's award of these options (SOF ¶ 21). Under the contract's default clause, A4 may be entitled to additional days to perform the contract based upon an unforeseeable event such as an epidemic or quarantine restrictions. *See* FAR 52.249-10(b)(1)(vi)-(vii); *Goodloe Marine, Inc*., ASBCA Nos. 62106, 62446, 22-1 BCA ¶ 38,053 at 184,774-75 (a contractor's right to perform could not be terminated if it was delayed due to unforeseen causes beyond its control and without its fault or negligence). The government exercised these options on March 30, 2021 (SOF ¶ 20). At the time the government exercised the options, the record is unclear as to whether A4 was aware its subcontractors could incur delays in performing this work due to COVID-19.

The government further contends A4 waived its claims related to COVID-19 delays and impacts that occurred between March 1, 2020, and May 31, 2021, when it signed bilateral Modification Nos. A00001, A00002, A00003, A00004 and A00005 (gov't mot. at 44). Mountaineering Contract bilateral Modification Nos. A00001 through A00004 cover the period from March 1, 2020, to February 28, 2021 (SOF ¶¶ 5, 9, 33, 35). The government exercised the options for CLINs 0006 and 0007 on March 30, 2021 (SOF ¶ 20). The record is unclear on when A4's subcontractors incurred the alleged COVID-19 delays in performing that work, but it likely would have been after the exercise of the options and the period covered by Modification Nos. A00001 through A00004. Moreover, Modification No. A00005 extended A4's performance time eight days for COVID-19 delays that occurred in April and May 2021 (SOF ¶ 30). It is unclear whether the parties intended those eight days to include any of the COVID-19 delay days associated with the subcontractor's performance on Option CLINs 0006 and 0007. Since the government bears the burden of proof on defenses of release and accord and satisfaction, we deny the government's motion as to A4's delay claim arising from any COVID-19 impact on its subcontractors performing option CLINs 0006 & 0007. *See Sonabend Company*, 24-1 BCA ¶ 38,482 at 187,033 (citing *Optex Sys., Inc*., ASBCA No. 58220, 14-1 BCA ¶ 35,801 at 175,097); *Enzo Biochem, Inc. v. Applera Corp*., 599 F.3d 1325, 1337 (Fed. Cir. 2010) ("the movant must make a stronger claim to summary judgment by introducing supporting evidence that would conclusively establish movant's right to a judgment after trial should nonmovant fail to rebut the evidence) (quoting 11 James Wm. Moore, Moore's Federal Practice § 56.13[1] (3d ed. 2009).

**COVID-19 Delays in Procuring Roofing Materials**

The government next moves for summary judgment on A4's request for 14-delay days resulting from COVID-19 caused delays in obtaining roofing materials

asserting A4 explicitly released all its COVID-19 caused roofing delay claims when it signed bilateral Modification No. A00005 containing an unambiguous release (gov't mot. at 41-42). It is unclear, however, whether the parties intended Modification No. A00005 to cover A4's claimed 14-day COVID-19 roofing delay. As previously discussed, Modification No. A00005 covers COVID-19 caused delays that occurred in April and May 2021 (SOF ¶ 30). The existing record does not indicate when A4's alleged COVID-19 caused roofing delay occurred.

The emails in the record suggest this roofing delay occurred sometime in early 2021 (SOF ¶ 29). Modification No. P00005 did not address the February 2021 time-period and awarded A4 zero calendar delay days for COVID-19 caused delays in March 2021 (SOF ¶ 30). Since the government bears the burden of proof on accord and satisfaction and release defenses, we deny the government's motion as to A4's delay claim arising from the COVID-19 roofing delay claim since it is unclear whether the parties intended Modification P00005 to cover that claim. *See Sonabend Company*, 24-1 BCA ¶ 38,482 at 187,033.

**BZ Phase Subcontractor Replacement and July 2021 Flooding**

The government next moves for summary judgment on A4's claims for time and money related to finding a replacement concrete subcontractor for BZ Phase and flooding that occurred on the mountaineering project in July 2021 (gov't mot. at 42-44).[11] BZ Phase apparently abandoned the job of pouring and finishing interior concrete slabs on the mountaineering project (SOF ¶ 22). A4 had difficulty obtaining a replacement concrete subcontractor due to the COVID-19 pandemic caused labor shortages (*id.*). In its response to the government's October 26, 2021, show cause notice, A4 requested the government add 69-delay days to the contract completion date due to this delay (*id.*). A4 subsequently reduced its request to 67-delay days (*id.*). The USACE notified A4 that it agreed with 64 of A4's requested 67-delay days associated with the BZ Phase replacement subcontractor claim (SOF ¶ 23). The government noted the first workday impacted by BZ Phase's departure was September 13 and not September 10 (*id.*).

In the same response to the government's October 26, 2021, show cause notice, A4 requested an additional 77-delay days allegedly resulting from flooding that occurred on the mountaineering project in July 2021 (SOF ¶ 25). A4 alleges the flooding resulted from run off from other government sites (*id.*). A4 claims it incurred 49-delay days itself, the flooded Berwick communications box resulted in an additional six-delay days, and the replacement of the damaged Void Forms took an additional 22 days due to COVID-19 delays (*id.*)

---

[11] The government appears to combine its discussion of these two separate claims since Modification No. P00003 addressed both claims.

The government responded that it identified only three weather delay days during July 2021 which did not exceed the contractually allotted five weather days for July (SOF ¶ 26). The government, however, found partial merit to A4's requested delay days due to the extended period required to procure the replacement Void Forms (*id.*). The government determined A4 was entitled to 17 of its requested 22-delay days for replacing the Void Forms (*id.*).

The USACE and A4 agreed to Mountaineering Contract bilateral Modification No. P00003 that extended the contract period 81 days (SOF ¶ 28). The modification referenced the government's December 20, 2021, letter responding to A4's response to the government's show cause notice (*id.*). While the modification references "weather conditions", it appears to award the 81-delay days for COVID-19 supply chain impacts associated with reprocuring the concrete subcontractor BZ Phase and the replacement Void Forms.

The record is unclear as to whether the parties intended Modification No. P00003 to cover A4's other 2021 flood related delay claims. As such, we grant the government's summary judgment as to A4's delay claims related to replacing its subcontractor BZ Phase and the replacement of the Void Forms since Modification No. P00003 specifically covers those claims. However, we deny the government's motion for summary judgment as to A4's other July 2021 flood runoff delay claims since we conclude that Modification No. P00003 is not an accord and satisfaction as to those claims.

**A4's Other COVID-19 Related Impacts**

In its June 2022 claim, A4 sought 377-days of delay including COVID-19 delays (SOF ¶ 37). The Board previously dismissed A4's appeal of the denial of its Mountaineering Contract COVID-19 impact claim since A4 failed to include a sum certain amount for its alleged increased COVID-19 costs or the number of delay days it attributed to COVID-19 impacts. *A4 Construction Company, Inc.*, ASBCA No. 63252 *et al.*, 24-1 BCA ¶ 38,578 at 187,505. The government correctly notes that while the Board's decision dismissed A4's COVID-19 impact claims from A4's equitable adjustment claim in ASBCA No. 63456, A4 also raised the COVID-19 impacts in its response to the government's termination for default in ASBCA No. 63252 (gov't mot. at 44). In this motion, the government seeks a summary judgment barring A4 from making claims in ASBCA No. 63252 that the mountaineering project was delayed and impacted by COVID-19 during the periods covered by certain modifications (*id.*).[12]

---

[12] The Board notes that after the government filed this summary judgment motion, A4 submitted a new claim for COVID-19 impacts with a stated sum certain amount

25

Specifically, the government moves for summary judgment on A4's COVID-19 related impacts that occurred during the periods of March 1, 2020, to May 31, 2021, contending those claims are barred by the doctrines of accord and satisfaction and/or release (gov't mot. at 44-46). The government argues A4 waived its claims to additional COVID-19 related impacts occurring during that period when it signed bilateral Modification Nos. A00001, A00002, A00003, A00004 and A00005 (*id.* at 44). Furthermore, the government contends A4 waived its claim for COVID-19 impacts occurring between August 11, 2021, and August 31, 2021, when it executed bilateral Modification No. P00003 for COVID-19 impacts that occurred during that period (*id.*). In all, the government claims it agreed to extend the contract performance period 103 calendar days due to the COVID-19 impacts during those time periods (*id.* at 45).

In Modification No. A00001, the parties agreed to extend the contract's performance period 12 calendar days due to COVID-19 impacts for the period of March 1, 2020, through June 30, 2020 (SOF ¶ 5). In Modification No. A00002, the parties subsequently agreed to extend the contract's performance period 31 calendar days due to COVID-19 delays occurring in July 2020 (SOF ¶ 9). In Modification No. A00003, the parties agreed to extend the contract's performance period 14 calendar days due to COVID-19 impacts occurring during August 1, 2020, through August 14, 2020 (SOF ¶ 33). In Modification No. A00004, the parties agreed to extend the contract's performance period two calendar days due to COVID-19 impacts occurring during August 15, 2020, to February 28, 2021 (SOF ¶ 35). Finally, in Modification No. A00005, the parties agreed to extend the contract's performance period eight days due to COVID-19 impacts occurring during March 1, 2021, through May 31, 2021 (SOF ¶ 30).[13] Mr. Anderson electronically signed the modifications on A4's behalf (SOF ¶¶ 5, 9, 30, 33, 35).

These bilateral modifications extended the contract 67 calendar days due to the COVID-19 impacts occurring during those periods. Moreover, the modifications contained the same unambiguous release language releasing the government "from any and all liability under this contract for further equitable adjustments attributable to such facts or circumstances" (SOF ¶¶ 6, 10, 31, 34, 36). In consideration of the 67-calendar day extension, A4 expressly released the government from any further

and alleged COVID-19 delay days. A4 appealed the government's denial of that claim to the Board (ASBCA No. 63961). The government has not moved for summary judgment on that appeal.

[13] In its motion, the government mistakenly indicates Modification No. A00005 extended the mountaineering contract 27 days for COVID-19 delays (gov't mot. at 45). The modification extended the contract 19 calendar days for weather delays and eight calendar days for COVID-19 (SOF ¶ 30).

liability under the mountaineering contract for further equitable adjustments attributable to COVID-19 delays during those covered periods. Except as previously discussed with regards to A4's COVID-19 delay claims for its subcontractors performing option CLINS 0006 and 0007 and the roofing materials, we grant the government's summary judgment as to A4's COVID-19 impact delay claims that occurred during the period of March 1, 2020, to May 31, 2021, finding the above modifications are an accord and satisfaction to those claims, and A4 released the government from any further equitable adjustments resulting from COVID-19 impacts that may have occurred during those periods.[14]

The government also contends A4's claims for COVID-19 related impacts during August 11, 2021, to August 31, 2021, are barred by accord and satisfaction since A4 signed Modification No. P00003 addressing COVID-19 impacts during that period (gov't mot. at 44). Modification No. P00003 extended the mountaineering contract 81-calendar days due to impacts from replacing the BZ phase concrete subcontractor and the damaged Void Forms (SOF ¶ 28). Modification No. P00003 does not address any other COVID-19 delays. As such, we find Modification No. P00003 an accord and satisfaction only as to the COVID-19 delays associated with those two events but not any other COVID-19 delays that may have occurred during that period.

In summary, except as previously noted, we grant the government's summary judgment as to any A4 COVID-19 impact delays that occurred during the period of March 1, 2020, to May 31, 2021, and as to A4's COVID-19 impact claims related to replacing its BZ Phase concrete subcontractor and the Void Forms.

## B.     The HPTC Contract Claims

**Earthquake & COVID-19 Impacts Between March 2020 – August 2020**

The government first moves for summary judgment on A4's HPTC Contract claim for two-delay days resulting from its architect being out of communication due to the March 2020 Utah earthquake and any COVID-19 impacts that occurred between March and August 2020 (gov't mot. at 47). The government contends HPTC Contract

---

[14] As previously discussed, we do not grant the government's motion as to any COVID-19 delay impact to A4's subcontractors performing work on option CLINs 0006 and 0007 or on A4's claim for potential COVID-19 impacts to delays in procuring roofing materials. Mountaineering Contract Modification No. A00004 that arguably covered the period of those delays awarded A4 two delay days in September 2020 attributable to COVID-19 (SOF ¶ 35). Any COVID-19 delays by these A4 subcontractors would have occurred long after that date.

bilateral Modification No. A00002 is an accord and satisfaction to those claims since it involved the same subject matter (gov't mot. at 46-47). Furthermore, the government contends Modification No. A00002's release bars those claims (*id.*).

A4 initially requested a 50 working day no cost time extension to the CCD for impacts resulting from the March 2020 Utah earthquake and COVID-19 impacts (SOF ¶ 38). The government reviewed that request and instead calculated a 63-calendar day extension resulting from those impacts (*id.*). A4 concurred with the government's calculation (*id.*). The parties executed HPTC Contract bilateral Modification No. A00002 to extend the CCD for 63 days due to the Utah earthquake and COVID-19 impacts from March 2020 – August 2020 (SOF ¶ 39).

Modification No. A00002's language is clear and unambiguous. The plain language indicates the parties intended it to cover the earthquake and COVID-19 impacts during the stated period. Mr. Anderson electronically signed the modification on A4's behalf (*id.*). Moreover, A4 specifically released the government "from any and all liability under this contract for further equitable adjustments attributable to" the earthquake and COVID-19 impacts during that period (SOF ¶ 40). As such, the government's summary judgment motion on these claims is granted.

**Fiber Optic Cables Re-Routing**

The government next moves for summary judgment on a "fiber optic cables re-route" claim again upon the grounds of accord and satisfaction and a signed release in HPTC Contract Modification No. A00004 (gov't mot. at 47-48). A4 responds that it does not have a "fiber optic cables re-route" claim (app. opp'n at 41). Rather, A4 asserts it is pursuing an equitable adjustment claim in connection with work to remove the concrete associated with a communications vault (*id.*).

A4 appears to be correct. A4's HPTC Contract claim involves a request for delay days associated with a "fiber optic vault change" and not re-routing a fiber optic cable (SOF ¶ 45). Likewise, A4's complaint does not address a "fiber optic cables re-routing" issue. The government's request for summary judgment on this issue is denied since A4's "fiber optic vault" claim does not appear to be the subject of HPTC Contract Modification No. A00004.

**Hydroworx Pool**

The government also moves for summary judgment on A4's claims for additional costs and delay days associated with the government change from a Swimex to a Hydroworx pool (gov't mot. at 48-49). The government contends A4's equitable adjustment claims related to the Hydroworx pool are barred under the doctrine of accord and satisfaction since A4 and the government signed HPTC Contract

28

Modification No. P00003 that previously addressed the subject of those claims (*id.* at 49). Furthermore, the government contends A4 released those claims when it signed Modification No. P00003 containing a plain and unambiguous release related to the installation of the Hydroworx pool (*id.*).

Modification No. P00003 meets all the requirements for an accord and satisfaction on A4's Hydroworx pool change claims. Modification No. P00003 clearly addressed the Hydroworx pool change (SOF ¶ 47). The government gave A4 its proposed price for the change ($300,207) (SOF ¶¶ 46-47). Furthermore, Modification No. P00003 reflected A4's proposal that this change would result in no increased contract time (*id.*). Finally, competent parties signed the modification (SOF ¶ 47).

HPTC Contract Modification No. P00003 also contains a plain and unambiguous release (SOF ¶ 48). In that release, A4 released the government from "any and all liability under this contract for further equitable adjustments attributable to" the Hydroworx pool change (*id*).

We grant the government's summary judgment motion on A4's Hydroworx pool claims since HPTC Contract Modification No. P00003 is an accord and satisfaction of those claims and A4 released the claims.

**Cognitive Lab Change**

The government next moves for summary judgment on A4's claims for additional costs and delay days associated with the government change for the design and construction of a cognitive training lab within the HPTC training center (gov't mot. at 49-50). The government contends A4's equitable adjustment claims resulting from this change are barred under the doctrine of accord and satisfaction since A4 and the government signed HPTC Contract Modification No. P00004 that previously addressed those claims (*id.* at 50). Furthermore, the government contends A4 released the claims when it signed Modification No. P00004 containing a plain and unambiguous release (*id.*).

Modification No. P00004 meets all the requirements for an accord and satisfaction on the cognitive lab change. Modification No. P00004 clearly addressed the cognitive lab change and competent parties signed the modification (SOF ¶ 51). The government gave A4 its proposed price and requested delay days for this change ($955,207 and a contract extension of 77 calendar days) (SOF ¶¶ 50-51).

Furthermore, Modification No. P00004 contains a plain and unambiguous release (SOF ¶ 52). In that release, A4 released the government from "any and all liability under this contract for further equitable adjustments attributable to" the cognitive lab change (*id.*). Moreover, the release indicated the contract price and time

adjustments were intended to include "all costs and time incurred by the contractor as a consequence of this modification . . . including, but not limited to, those for delay, impact, inefficiency and extended field and home office overhead" (*id.*).

We grant the government's summary judgment motion on A4's cognitive lab claims since HPTC Contract Modification No. P00004 is an accord and satisfaction of those claims and A4 released the claims.

**Gym Flooring Changes**

Finally, the government moves for summary judgment on A4's claim for additional contract delay days resulting from the change to the gym flooring specifications (gov't mot. at 51). The government contends A4's equitable adjustment claim for this change is barred under the doctrine of accord and satisfaction since A4 and the government signed HPTC Contract Modification No. A00007 that previously addressed this change (*id.*). Furthermore, the government contends A4 released this claim when it signed Modification No. A00007 containing a plain and unambiguous release covering claims related to the change (*id.*).

Modification No. A00007 meets all the requirements for an accord and satisfaction on the gym flooring change. The modification clearly addresses the gym flooring change and competent parties signed the modification (SOF ¶ 55). The government also gave A4 its proposed price for this change ($45,426) (SOF ¶¶ 54-55). A4 did not request any change to the contract time in its proposal (SOF ¶ 54).

Modification No. A00007 also contains a plain and unambiguous release (SOF ¶ 56). In that release, A4 released the government from "any and all liability under this contract for further equitable adjustments attributable to" the gym flooring change (*id.*). Moreover, the release indicated the contract price and time adjustments were intended to include "all costs and time incurred by the contractor as a consequence of this modification . . . including, but not limited to, those for delay, impact, inefficiency and extended field and home office overhead" (*id.*).

We grant the government's summary judgment motion on A4's gym floor claims since HPTC Contract Modification No. A00007 is an accord and satisfaction to those claims and A4 released the claims.

**IV.    The Releases Are Unambiguous and Enforceable**

Despite the clear and unambiguous release language in these modifications, A4 contends the releases are unenforceable even if A4's claims fall within the releases' scope since A4 never agreed to the release language, the government misled A4 into signing the releases, the government waived some of the releases due to the

subsequent award of additional weather delay days and the modifications containing the releases were signed under economic duress and are contrary to public policy (app. opp'n at 38-44). Claims covered by a release should only be considered in special and limited circumstances, such as where the release contains a specific exception for the claim, or the release was entered under economic duress. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1395 (Fed. Cir. 1987). Here, the subject releases contain no exceptions.

A4 first contends it did not agree to the release language because Mr. Anderson did not read that language since the signatures were on the modifications' first page and the release language was on later pages (app. opp'n at 38-39). Mr. Anderson's failure to read the entire contract modification, however, does not relieve A4 from any contractual obligations. It is well established that one who signs a contractual document, in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know and assent to the document's contents. *See* WILLISTON ON CONTRACTS § 70:114 (4th ed.) (May 2024); *Maxima Corp. v. United States*, 847 F.2d 1549, 1556 (Fed. Cir. 1988) (parties to a contract are charged with knowledge of its terms and cannot avoid its legal responsibilities by asserting ignorance); *CiyaSoft Corporation*, ASBCA Nos. 59519, 59913, 18-1 BCA ¶ 37,084 at 180,518 (the law generally does not permit a party to avoid the terms of a contract on the ground that he or she failed to read it). A4's failure to read the modifications' release language before signing the documents does not nullify the releases.

A4 next contends the releases should be set aside since it relied upon government assurances that A4 could still pursue claims for additional equitable adjustments after signing the modifications (app. opp'n at 39). In support of this contention, A4 provides declarations from Mr. Anderson and Mr. Bryce Hammon, A4's project manager. Both declarations state government personnel told them, "A4 could and should file claims for equitable adjustment for extra days and payment which were not included in modifications, even if A4 had signed the modifications" (app. opp'n, ex. A ¶¶ 17-18, ex. B ¶ 16). The parol evidence rule would usually preclude the Board from considering extrinsic evidence to vary clear and unambiguous release language. *See, e.g., Rumsfeld v. Freedom NY, Inc.*, 329 F.3d 1320, 1327 (Fed. Cir. 2003); *McAbee Constr. Inc. v. United States*, 97 F.3d 1431, 1434 (Fed. Cir. 1996). An allegation of misrepresentation for fraud, however, is one exception to the parol evidence rule. *See Tanik Construction Company, Inc.*, 22-1 BCA ¶ 38,147 at 185,283.

A4 is correct that government misrepresentations can invalidate an otherwise valid release. *See Rumsfeld*, 329 F.3d at 1327. "To prevail in such a case, the contractor must prove that the government made an erroneous representation of material fact and that the contractor honestly and reasonably relied upon it to its detriment." *Tanik Construction Co.*, 22-1 BCA ¶ 38,147 at 185,284. Other than its

31

self-servicing declarations, A4 has provided no evidence that the government misrepresented the facts or that it relied upon any such misrepresentation.

By signing the modifications containing the releases, A4 agreed to release the government from any additional liability for further equitable adjustments to the extent the modifications related to the facts and circumstances giving rise to those A4 claims that were the subject of the modifications. A4's alleged government statements are directly contrary to the plain release language. Moreover, A4 has presented no contemporaneous evidence that the government made erroneous misrepresentations of fact or that A4 notified the government of an intent to assert future claims related to the modifications' facts and circumstances. *See Odyssey International, Inc.*, ASBCA Nos. 62062, 62279, 21-1 BCA ¶ 37,902 at 184,073 ("Upon review of the entire record, and drawing all reasonable inferences in favor of Odyssey, we fail to find any evidence in the record that reasonably supports Odyssey's allegation of fraud or misrepresentation"). *Colorado River Materials, Inc. d/b/a NAC Construction*, ASBCA No. 57751, 13-1 BCA ¶ 35,233 at 172,992 (contractor's allegations that it would not have signed the modification but for the government's repeated assurances that the modification did not settle the change order insufficient to demonstrate the existence of a material factual dispute, given the plain language of the release and other communications from the government to the appellant).

The government also suggests the asserted statements, if made, could be interpreted to mean A4 had a right to assert future equitable claims under the contracts except regarding those claims related to the facts and circumstances specifically identified in the modifications (gov't reply at 6). The government's interpretation appears reasonable. Finally, the government points out the two government employees whom A4 alleges made this statement both worked only on the HPTC Contract and not the Mountaineering Contract (*id.*). At best, A4's contention would impact only the HPTC Contract. We conclude no rational fact finder could conclude from the alleged statements contained in the declarations that the government sought to mislead A4 into signing the modifications.

A4's third contention in its opposition brief is that the government waived its right to enforce the releases in Mountaineering Contract Modification Nos. A00001, A00003 and A00004 covering the earthquake, weather and COVID-19 delays because the government subsequently agreed to increase the contract time by 17 days related to flooding of the mountaineering job site and an additional 17 days for the Void Forms (app. opp'n at 39-40). Appellant's contention is confusing. On the Mountaineering Contract, the government awarded A4 17-delay days in Modification No. P00003 due to the COVID-19 supply chain delay in replacing the Void Forms damaged in the July 2021 flooding and 19-delay days in Modification No. A00005 for weather delays occurring in March, April and May 2021 (SOF ¶¶ 28, 30). At best, we understand appellant's argument to be that the government's approval of subsequent weather

32

delays somehow negates the releases in Modification Nos. A00001, A00003 and A00004. *See JDV Construction Inc.*, ASBCA No. 37937, 89-3 BCA ¶ 22,012 at 110,665 (government's subsequent granting of time extension indicated parties did not intend the boilerplate releases to act as a bar to all additional claims).

To invoke this exception, A4 must identify some government conduct that led it to believe the government was still considering its claims covered by the modifications. *Clean by Lucy, Inc.*, ASBCA No. 58432 *et al.*, 16-1 BCA ¶ 36,287 at 176,971. Modification Nos. A00001, A00003, and A00004 covered time-periods from March 2020 through February 2021 (SOF ¶¶ 5, 33, 35). The 17-day delay the government awarded to A4 in Modification No. P00003 resulted from impacts from the July 2021 flood while the 19-day delay the government awarded to A4 for weather delays in Modification No. A00005 occurred in March, April and May 2021 (SOF ¶¶ 28, 30). The government's award of delay days due to COVID-19 impacts in replacing forms damaged by the July 2021 flooding and impacts resulting from later weather delays are not related to the claims A4 released in Modification Nos. A00001, A00003 and A00004. As such, the government's subsequent delay awards did not waive its right to enforce the prior releases covering different claims.

A4 next contends the releases are unenforceable because A4 signed them under economic duress (app. opp'n at 41-42). In support of its economic duress contention, A4 provided declarations from Mr. Anderson and Mr. Hammon asserting USACE personnel threatened to impose liquidated damages and not approve A4's schedule and issue payments if A4 did not sign the modifications (app. opp'n, ex. A at ¶¶ 12, 14, ex. B at ¶¶ 9, 11 13, 15). As previously discussed, the parties' prior discussions are normally not considered when interpreting a clear and unambiguous release. An allegation of duress, however, is another exception to the parol evidence rule. RESTATEMENT (SECOND) OF CONTRACTS § 214(d) (1981) (earlier negotiations may be used to establish illegality, duress, or other invalidating cause).

To prevail on an economic duress defense, A4 must establish (1) it involuntarily accepted the other party's terms; (2) circumstances permitted no other alternative; and (3) such circumstances were the result of the other party's coercive acts. *Rumsfeld*, 329 F.3d at 1329 (citation omitted). A4 has not made a plausible showing that it meets any of the duress elements.

First, A4 has identified no contemporary evidence showing it involuntarily accepted the modifications' terms or that it had any reservation or regret in signing the modifications. *See Liebherr Crane Corp. v. United States*, 810 F.2d 1153, 1158 (Fed. Cir. 1987) (no duress supported by substantial evidence when there was "no indication that [the contractor's acceptance] was involuntary"). In fact, several of the

33

modifications adopt A4's proposals.[15] *See J.C. Equipment Corp. v. England*, 360 F.3d 1311, 1316 (Fed. Cir. 2004) (contractor's contention that it signed release under duress "rings hollow" where the modifications involved payment of additional money). This Board has previously rejected an allegation of duress when the record contains no "contemporaneous, corroborating proof" supporting the duress allegation. *Starghill Alternative Energy Corp.*, ASBCA Nos. 49612, 49732, 98-1 BCA ¶ 29,708 at 147,232.

A4 also contends it had no choice but to sign the modifications due to the "extraordinary circumstances existing at the time" (app. opp'n, ex. A (Anderson Decl.) ¶ 12). Here, the "extraordinary circumstances" referred to by Mr. Anderson appear to have been caused by the COVID-19 pandemic. Government action did not cause A4's financial challenges. *See Johnson, Drake & Piper, Inc. v. United States*, 531 F.2d 1037, 1042 (Ct. Cl. 1976) ("The mere stress of business conditions will not constitute duress where the defendant was not responsible for the conditions."); *Sys. Tech. Assocs., Inc. v. United States*, 699 F.2d 1383, 1387 (Fed. Cir. 1983) (government delay in not making an audit available for five to six weeks did not amount to coercion when there was no proof that the delay caused the contractor's financial distress). We find no evidence that the government caused A4's financial difficulties.

Finally, to establish coercion, A4 must prove wrongful government action. *Rumsfeld*, 329 F.3d at 1330. "Economic pressure and 'even the threat of considerable financial loss' are not duress." *Johnson, Drake & Piper, Inc. v. United States*, 531 F.2d 1037, 1042 (Ct. Cl. 1976) (quoting *International Tel. & Tel. Corp. v. United States*, 509 F.2d 541, 549 n.11 (Ct. Cl. 1975); *Sand Point Services LLC*, ASBCA Nos. 61819, 61820, 24-1 BCA ¶ 38,497 at 187,128 (government's notice to contractor that it might terminate the contract for default for untimely performance if contractor did not sign the modification was not duress). Even if the alleged statements are true, A4's allegation that government personnel said it would not issue payment unless A4 had an approved schedule is not coercion since the contracts explicitly contained that requirement under FAR 52.236-15(a), SCHEDULES FOR CONSTRUCTION

---

[15] For example, Mountaineering Contract Modification No. A00007 gave A4 its proposed price for the gas piping change following the deduction for the electrical lift station (SOF ¶¶ 13-14); Mountaineering Contract Modification No. A00002 gave A4 its requested two delay days resulting from the Utah earthquake (SOF ¶¶ 4-5); HPTC Contract Modification No. P00003 gave A4 its proposed price for the Hydroworx pool change (SOF ¶¶ 46-47); HPTC Contract Modification No. P00004 gave A4 its proposed price and requested delay days for the cognitive lab change (SOF ¶¶ 50-51); and finally, HPTC Contract Modification No. A00007 gave A4 its revised proposal price for the gym flooring change (SOF ¶¶ 54-55).

CONTRACTS (APR 1984) (Mountaineering R4, tab 4 at 3037, tab 41; HPTC R4, tab 5 at 11948).[16]  Similarly, a government threat to impose liquidated damages if A4 did not timely complete the work is not coercion.  It is not duress to threaten to make good faith use of the remedies prescribed under the contract.  *Env't Tectonics Corp.*, ASBCA No. 23374, 86-1 BCA ¶ 18,649 at 93,782 (citing *Johnson, Drake & Piper, Inc.*, 531 F.2d at 1043).  Here, the government had a contractual right to assert liquidated damages under FAR 52.211-12(a), LIQUIDATED DAMAGES—CONSTRUCTION (SEP 2000), if A4 failed to timely complete the work (Mountaineering R4, tab 4 at 3059; HPTC R4, tab 5 at 11964).[17]

Finally, the Board notes A4 failed to raise its duress contention to invalidate the release until after the government filed its motion for partial summary judgment.  "[O]ne who relies upon duress to avoid his contract must repudiate that contract promptly or at least within a reasonable time after he ceases to be vulnerable to the alleged duress."  *Sand Point Services, LLC*, ASBCA Nos. 61819, 61820, 24-1 BCA ¶ 38,497 at 187,129 (citations omitted).  A4 waited more than three years after entering into the modifications to raise its duress contention.  It did not raise this issue in either its claims or complaints.  A4's failure to raise its duress contention within a reasonable time is proof negating that contention.  *See Johnson, Drake & Piper, Inc.*, 531 F.2d at 1043 (waiting three years to raise duress contention "is compelling evidence that there was no duress in fact."); *Exceed Resources, Inc.*, ASBCA No. 61652, 20-1 BCA ¶ 37,634 at 182,722 (more than three-year gap between events in question and affidavits alleging duress is reason for doubting the allegation); *Sand Point Services, Inc.*, 24-1 BCA ¶ 38,497 at 187,129 (more-than-two years of silence and inaction constitutes clear proof negating duress contention).

A4's allegation of economic duress supported only by self-serving affidavits is not enough to create a factual dispute regarding economic duress.  *See Exceed Resources, Inc.*, 20-1 BCA ¶ 37,634 at 182,722 (citing *Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1238-39, 1241-43 (Fed. Cir. 2002) (uncorroborated affidavits alleging that the contracting officer used threats to force contractor to sign modifications not enough to overcome summary judgment motion).  We find no

---

[16] *See* FAR 52.236-15(a), SCHEDULES FOR CONSTRUCTION CONTRACTS (APR 1984) ("If the Contractor fails to submit a schedule within the time prescribed, the Contracting Officer may withhold approval of progress payments until the Contractor submits the required schedule.").

[17] *See* FAR 52.211-12(a), LIQUIDATED DAMAGES—CONSTRUCTION (SEP 2000) ("If the Contractor fails to complete the work within the time inserted on the PRICING SCHEDULE and in Item 11 on page 00 10 00-1 of Standard Form 1442, the Contractor shall pay liquidated damages to the Government in the amount of [$940.00] [$790.00] for each calendar day of delay until the work is completed or accepted.").

rational fact finder could find the government coerced A4 into signing these modifications containing the releases.

A4's final contention is that the releases should be voided because they are contrary to public policy (app. opp'n at 43-44). A4 contends USACE personnel were unaware of an Office of Management and Budget (OMB) memorandum dealing with COVID-19 and failed to inform A4 of its contents (*id.*). The government responds that its personnel were not bound by the OMB guidance, but they followed similar guidance (gov't reply at 14 (citing ex. D (Duggan Aff.) ¶¶ 10-11)). The OMB memorandum directed agencies to work with contractors to provide performance extensions where appropriate and consider requests for equitable adjustments for allowable costs necessary to protect the health and safety of contractor employees performing the contract (Mountaineering R4, tab 86 at 6768, 6771). Regardless of whether the USACE personnel were aware of the OMB memorandum, the USACE employees appear to have followed that guidance in working with A4 to resolve its COVID-19 impacts resulting in the various modifications extending contract performance. The OMB guidance does not say the government must pay a contractor for its increased subcontractor and vendor costs resulting from COVID-19 on fixed-price contracts. We find the modifications at issue are not contrary to public policy.

## CONCLUSION

Based upon the foregoing, we grant the government's motion for summary judgment on A4's Mountaineering Contract claims for any "delays and impacts" A4 asserts arose from the March 2020 earthquake, from the July 2020 flood that occurred during July 2020, from the gas piping change, increased costs its subcontractor's incurred to procure and install the electronic security and audio-visual systems on Option CLINs 0006 & 0007 as a result of the COVID-19 pandemic, delay claims related to replacing its subcontractor BZ Phase and the Void Forms and any A4 COVID-19 impact delays during the period of March 1, 2020, to May 31, 2021 (except any delay claims related to the subcontractors' performance on Option CLINs 0006 & 0007 and the Rooftek roofing). We deny the government's motion on A4's Mountaineering Contract claims for impacts from the July 2020 flood occurring in periods other than July 2020, delays arising from the COVID-19 impact on its subcontractors' performance on option CLINs 0006 & 0007, its Rooftek roofing delay claim arising from COVID-19 and its delay claims arising from the July 2021 flood except as to its Void Form replacement claim.

We also grant the government's motion for summary judgment on A4's HPTC Contract claims for delays resulting from the March 2020 earthquake, COVID-19 impacts occurring between March through August 2020, costs and delays related to the

36

Hydroworx pool, costs and delays related to the cognitive lab change and costs and delays related to the gym flooring changes. We deny the government's motion on A4's claim for costs and delay associated with the fiber optic vault change on the HPTC Contract.

Dated: May 16, 2025

ARTHUR M. TAYLOR
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

I concur

OWEN C. WILSON
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

MICHAEL N. O'CONNELL
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 63252, 63456, 63626, 63961, Appeals of A4 Construction Company, Inc., rendered in conformance with the Board's Charter.

Dated: May 19, 2025

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals